1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NORTH CAROLINA

3                              )
   UNITED STATES OF AMERICA,   )
4                              )   DOCKET NO. 5:19-CR-00095-D-1
                   Plaintiff,  )
5                              )
   vs.                         )
6                              )
   DAVID SIERRA OROZCO,        )
7                              )
                   Defendant.  )
8   _____

9           TRANSCRIPT OF DETENTION HEARING
          BEFORE MAGISTRATE JUDGE JAMES E. GATES
10         TUESDAY, MARCH 29, 2019; 2:04 PM
                RALEIGH, NORTH CAROLINA
11
   FOR THE PLAINTIFF:
12      United States Attorney's Office - EDNC
        By:  Melissa Belle Kessler, AUSA
13      150 Fayetteville Street, Suite 2100
        Raleigh, NC 27601
14
   FOR THE DEFENDANT:
15      Federal Public Defender
        By:  Katherine E. Shea, Esq.
16      150 Fayetteville Street, Suite 450
        Raleigh, NC 27601
17
   ALSO PRESENT:
18      Houda El Idrissi, Spanish Interpreter

19  Audio Operator:              CLERK'S OFFICE PERSONNEL

20
                        eScribers, LLC
21                    7227 N. 16th Street
                          Suite 207
22                    Phoenix, AZ 85020
                       973-406-2250
23                    www.escribers.net

24  Proceedings recorded by electronic sound recording; transcript
               produced by transcription service.
25



1                          I N D E X

                                                              VOIR
2     WITNESSES:              DIRECT  CROSS  REDIRECT  RECROSS  DIRE
      For the Government:
3     Mary Catherine Glenn Covington    4        7

4

5
      RULINGS:                                         PAGE   LINE
6     Government's motion for detention granted        15     10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Colloquy

1          P R O C E E D I N G S

2          THE CLERK:  Court is now in session.  Be seated and

3    come to order.

4          THE COURT:  Madam Clerk, can you please swear the

5    interpreter?

6          SPANISH INTERPRETER, HOUDA EL IDRISSI, SWORN

7          THE CLERK:  Thank you.

8          THE COURT:  We're here this afternoon, folks, in the

9    case of United States v. David Sierra Orozco.  And we're here

10   for a detention hearing.

11         I believe this is a presumption offense against Mr.

12   Orozco, meaning that the burden of production at the outset

13   rests with the defendant.

14         Ms. Shea, ma'am, be happy to hear any evidence that

15   the defendant wishes to present at this time.

16         MS. SHEA:  Thank you, Your Honor.

17         We believe it's not a presumption offense.

18         THE COURT:  Is that right?  Let me check.

19         MS. SHEA:  Your Honor, he's not charged with receipt,

20   unlike most of the offenders that we have.  It's just

21   possession.  So it's a 2252(a)(5)(A).  I'm sorry, 2252(a)(5).

22   And that is not included in the presumption offenses.

23         THE COURT:  Very good.  If I misspoke on that, I

24   apologize.

25         Is that -- Ms. Kessler, is that your assessment?



Colloquy

1      MS. KESSLER:  Your Honor, may I just have a moment to

2   look?

3      THE COURT:  You may.

4      MS. KESSLER:  Thank you.  And this is under -- this

5   is under 3142(e)(3)(E).  And it lists other child pornography

6   offenses, Your Honor.  And I believe that most folks are often

7   charged with receipt, which does carry the presumption.  But I

8   think possession only does not carry a rebuttable presumption.

9      Your Honor, looking at the statute, it appears to be

10   correct.  Although, it's an interesting -- it's interesting

11   that it's written that way, because the offenses are very,

12   very similar.  But I certainly concede that it does not list

13   possession of child pornography.

14      THE COURT:  Very well.  Well, let's proceed on that

15   basis, then.

16      Ms. Kessler, I'll be happy to hear the government's

17   evidence, then, at this time, ma'am.

18      MS. KESSLER:  Your Honor, the government would call

19   HIS Agent Glenn Covington.

20   GOVERNMENT'S WITNESS, MARY CATHERINE GLENN COVINGTON, SWORN

21      THE CLERK:  Thank you.  Be seated.

22      Please state your name for the record.

23      THE WITNESS:  It's Mary Catherine, C-A-T-H-E-R-I-N-E,

24   Glenn, G-L-E-N-N, Covington, C-O-V-I-N-G-T-O-N.

25                         DIRECT EXAMINATION



Mary Catherine Glenn Covington - Direct

1  BY MS. KESSLER:

2  Q.   Good afternoon.  Can you tell the Court where you work?

3  A.   I'm a special agent with Homeland Security Investigations

4  in Raleigh, North Carolina.  I've been an agent for fifteen

5  years.

6  Q.   And do you specialize in a -- certain type of cases?

7  A.   Child exploitation and sex trafficking.

8  Q.   And are you familiar with a case or investigation

9  involving David Sierra Orozco?

10 A.   Yes.

11 Q.   Can you tell the Court the facts surrounding that

12 investigation?

13 A.   I was contacted by the Harnett County Sheriff's office

14 regarding Mr. Orozco and child pornography that was located on

15 some SD cards that were found while he was getting processed

16 into the Harnett County Jail.

17 Q.   Okay.  Can you tell us about -- why was he in the Harnett

18 County Jail?

19 A.   He was pulled over by a Harnett County deputy for no

20 operator's license.  And the deputy that pulled him over

21 brought a dog to, I guess, sniff the car.  And at that point,

22 they got permission to look in the vehicle.  And then they

23 found a false compartment in the dashboard, located some cash.

24 So at that point he was arrested by the sheriff's office.

25 Q.   Was that 100,000 dollars in U.S. currency?



Mary Catherine Glenn Covington - Direct

1  A.    Yes.

2  Q.    Okay.  So he was arrested and then what happened?

3  A.    So he was arrested and then he was brought down to the

4  Harnett County Detention Center to be processed, booked into

5  the jail.  When he was -- they were searching him, there was a

6  folded one-hundred-dollar bill that was taken out of his

7  pocket.  The detention officer unfolded that bill and five SD

8  cards fell out.

9      At that point Mr. Orozco, he picked them up and shoved

10  them in his mouth.  Tried to eat them or ingest them.  The

11  detention officer was able to get three out.  One was bitten,

12  halfway chewed, and the other one was swallowed.

13  Q.    Okay.  And of the SD cards that were recovered, were they

14  searched?

15  A.    Yes.  The Harnett County Sheriff's office, CID was

16  contacted and they got a search warrant.  No, I'm sorry.  They

17  looked at the SD cards.  When they were looking at them they

18  noticed that there was child pornography.  And then they got a

19  search warrant for -- to look at the remainder of them,

20  because they located child pornography.  So a search -- state

21  search warrant was found -- or was executed.  And they did a

22  forensic examination and found child pornography on the SD

23  cards.

24  Q.    Ultimately, how much child pornography was found?

25  A.    On the 32-gigabyte micro SD card, they located fourteen



1  videos.  And on the 8-gigabyte SD card, they located three

2  images and 181 videos.

3  Q.  And just for clarity for the Court can you describe sort

4  of what type of images were found?

5  A.  On the 32-gig micro SD card it includes a young male

6  under the age of ten years old having sexual intercourse with

7  a chicken.  On the 8-gigabyte SD card is an infant toddler,

8  and adult male was rubbing, attempting to insert his penis

9  into the infant toddler female.  Which would -- which

10  classified it as an S&M video.

11  Q.  Okay.  And by S&M you mean a video that depicts

12  sadomasochistic actions?

13  A.  Yes.

14  Q.  Okay.

15       MS. KESSLER:  Your Honor, I have no further

16  questions.

17       THE COURT:  Ms. Shea, ma'am.

18       MS. SHEA:  Yes, Your Honor.  Thank you.

19                    CROSS-EXAMINATION

20  BY MS. SHEA:

21  Q.  You mentioned -- I'm sorry, good afternoon, Agt.

22  Covington.

23       You mentioned that he was originally pulled over by law

24  enforcement in Harnett County.  And that he was charged with

25  no operator's license.  Is that what you said?



Mary Catherine Glenn Covington - Cross

1    A.    Yes.

2    Q.    Was he charged with anything else?

3    A.    After they found the child pornography on the SD cards he

4    was charged with third degree exploitation of a minor, three

5    counts.

6    Q.    Do you know why they originally pulled him over?

7    A.    Let me check.

8          I know it was a traffic stop.

9    Q.    Do you know if they had any reason to believe that he had

10   no operator's license before they pulled him over?

11   A.    I do not know.  I didn't.

12   Q.    Okay.  Do you know why he got the dog to sniff the car?

13   A.    I do not know.

14   Q.    Do you know if the officer spoke Spanish?

15   A.    No.  I do not know.

16   Q.    Do you know whether my client speaks any English at all?

17   A.    I'm sorry?

18   Q.    Do you know whether my client speaks any English at all?

19   A.    I don't think he does.  I think he only strictly speaks

20   Spanish.

21   Q.    Yeah.  Not even like a little bit of conversational

22   English.  Is that your understanding?

23   A.    That's my understanding.

24   Q.    Do you know if it was one officer at the scene or

25   multiple officers?



Mary Catherine Glenn Covington - Cross

1    A.    I think originally it was one and then multiple offices

2    showed up.

3    Q.    What kind of car was it?

4    A.    A Lexus.

5    Q.    Do you know who it was registered to?

6          I'll move on.  Do you know if there was dashcam video?

7    A.    I don't know.

8    Q.    Do you know if there was a dashcam video?

9    A.    Yeah, I don't know if Harnett County has that or not.

10   Q.    The cash that you mentioned, there was no crime that was

11   charged with respect to having cash in the car, right?

12   A.    To my knowledge, I -- I don't know.

13   Q.    Is it your understanding that he was pretty cooperative

14   throughout this exchange?

15   A.    Reading the report, it seemed like he was cooperative.

16   Q.    You mentioned that they got permission to search the car.

17   Do you know how that was obtained given his lack of English-

18   speaking ability?

19   A.    No, I do not know.

20   Q.    Prior to this arrest in July of 2017 was Mr. Orozco on

21   anyone's radar?

22   A.    I do not believe so.

23   Q.    Prior to July 2017, he's never been charged with anything

24   else like this that you know of, right?

25   A.    That I know of, no.



Mary Catherine Glenn Covington - Cross

1    Q.   In your investigation, were you able to determine where

2    the SD cards came from?

3    A.   The SD cards came from his pocket on his person that he

4    put on the counter when he was getting processed.

5    Q.    I meant anything kind of descriptive about the SD cards,

6    like if they were purchased in a certain place?

7    A.   No.

8    Q.   Did he ever give any statements to law enforcement

9    regarding the SD cards?

10   A.   I don't believe so.

11   Q.   Did he ever give any statements about the money?

12   A.   Not that I'm -- not that I'm aware of because that was a

13   separate investigation.

14          MS. SHEA:  Thank you, Your Honor.  Those are my

15   questions.

16          THE COURT:  Thank you, ma'am.

17          Ms. Kessler?

18          MS. KESSLER:  No further questions, Your Honor.

19   Thank you.

20          THE COURT:  Very well.  Thank you, ma'am.

21          Is that the evidence from the government?

22          MS. KESSLER:  Yes, Your Honor.

23          THE COURT:  Very well, thank you.  I have reviewed

24   the pre-trial services report.

25          Ms. Shea, any evidence from the defendant?



Colloquy

1          MS. SHEA:  No, Your Honor.

2          THE COURT:  Very well.  Ms. Shea, you want to lead

3    off with your argument, then?

4          MS. SHEA:  Yes, Your Honor.

5          This is a very unusual child pornography case, Your

6    Honor.  Definitely unlike any of the ones that I've had

7    before.  I mean, it is sort of this isolated moment where he

8    gets somehow on the radar screen, is arrested and found with

9    these cards.

10          I will say that in terms of the weight of the

11    evidence against the person, I think that they're -- aside

12    from trying to swallow them, there's -- and the fact that

13    they're in this hundred-dollar bill, I don't think that there

14    is very strong evidence about where he got them from, whether

15    he looked at them, whether he was aware of the contents.  So I

16    think just in terms of the weight of the evidence, I think

17    that it is -- that it's interesting -- an interesting case.

18    And I think that there could be issues with the evidence

19    against him.

20          I also think there could be issues in terms of the

21    lawfulness of the search and stop, but I understand that

22    that's for another day.

23          Your Honor, he is a person that has absolutely no

24    criminal history.  He's never been arrested before.  We would

25    ask that you consider some other kind of other placement, like



1    a halfway house, instead of straight detention.  We understand

2    that he doesn't have family in the area to go -- to put on

3    third-party custodian today, but we would ask that you

4    consider something else instead of straight detention.

5        THE COURT:  Very well.  Thank you, ma'am.

6        Ms. Kessler.

7        MS. KESSLER:  Your Honor, the government would argue

8    that the only appropriate course of action in this case is

9    detention.

10        First, speaking to the crime itself, the crime that

11    was charged here.  Mr. Orozco was clearly was possession of

12    what was some very disturbing images of child pornography.

13    Because Mr. Orozco attempted to eat the evidence, it certainly

14    shows his knowledge of guilt, or knowledge that there was

15    content on those cards that law enforcement -- that he did not

16    want law enforcement to see.  But because of his actions, law

17    enforcement was only able to look at fewer than half of the SD

18    cards that were on Mr. Orozco's person.  Which means it may

19    only represent a small fraction of the evidence that was in

20    Mr. Orozco's possession.

21        But it is clear from the evidence that was recovered

22    that it is child pornography.  It's, as Agt. Covington

23    describes, some particularly heinous images of child

24    pornography.

25        So certainly in this case, the weight of the evidence



1    that that pornography was in his possession, Mr. Orozco at the

2    very least knew it was illegal contraband, is certainly

3    overwhelming.

4          But I think the more operative point, Your Honor, is

5    that there is no combination -- conditions or combinations of

6    conditions in this case that will ensure Mr. Orozco's

7    appearance in court.  Part of that is based on the fact that

8    he is in this country illegally.  He has no ties.  We have no

9    information about family, certainly no third-party custodians,

10   no history of employment.  It just seems that Mr. Orozco is

11   not -- has succeeded for years on not being on anyone's radar.

12   Has left no mark in this community.  And therefore, has no

13   ties to this community and presents a serious risk of flight.

14         Because these crimes against minors are serious cases

15   and there's so much in this case that isn't known, certainly

16   it is not a matter of course of the government to indict these

17   kinds of cases, just simple possession cases, but the facts

18   here are very strange and suspicious.  That Mr. Orozco was

19   pulled over without a driver's license.  That a hundred grand

20   in currency was found hidden inside of his car.  And that even

21   though the government hasn't, in its investigation -- or law

22   enforcement, in its investigation, hasn't been able to find

23   what that money is tied to, it certainly is concerning.  The

24   facts of this case are concerning.  And coupled with the fact

25   that there is no information as to where Mr. Orozco might work



Colloquy

1    or be employed or reside if he were released, I think all of

2    those facts weigh in favor of his detention.  Thank you, Your

3    Honor.

4         THE COURT:  Now is the government -- just so I

5    understand clearly.  I understand the government is seeking

6    detention on the basis of flight risk.  Is it also seeking

7    detention on the basis of risk of danger?

8         MS. KESSLER:  Certainly, Your Honor.  It's the

9    position of the government that anyone who is engaged in child

10   pornography in crimes against children present an ongoing

11   threat against the population.  Certainly, that's part of the

12   reason why a presumption exists in most of these cases.

13        And I would argue to Your Honor, although this is not

14   a receipt of child pornography, the only reason that it's not

15   is because the evidence exists in such a way that it is

16   impossible for law enforcement to figure out how it was

17   received or how it ended up on those disks.  But still,

18   certainly, Mr. Orozco was in possession of child pornography.

19        That is an ongoing crime.  Every time an image of

20   child pornography is disseminated, it's additional

21   victimization of those children who are depicted in those

22   images.  And it is an ongoing harm to the community, and

23   certainly congress views it in that light.  So for the

24   protection of the community, Your Honor, we would also argue

25   for detention in this case.



Colloquy

1          THE COURT:  Okay, very well.

2          MS. KESSLER:  Thank you.

3          THE COURT:  Thank you.

4          Ms. Shea, any final thoughts, ma'am?

5          MS. SHEA:  No, thank you.

6          THE COURT:  Very well.

7          Very well.  Based on the record developed for me, and

8    that would include the evidence as well as the argument, I do

9    believe the law requires me to allow the government's motion

10   for detention.

11         I do so find that the government has shown by a

12   preponderance of the evidence that no condition or combination

13   of conditions would reasonably assure the appearance of the

14   defendant as required.  And the clear and convincing evidence,

15   there's no condition or combination of conditions, that would

16   reasonably assure the safety of any other person in the

17   community if Mr. Orozco were to be released.

18         So my ruling does not affect the presumption of

19   innocence that you will continue to enjoy at the trial in your

20   case.  But a motion such as this, the Court is required to

21   consider certain specific factors.  And I'll note again for

22   the record, this is not a presumption case.  So no presumption

23   of detention is included in the Court's analysis.

24         One factor that is included is the weight of the

25   evidence.  And I believe the government has shown it has a



Colloquy

1    strong case against you.  And that would include the evidence

2    that these materials, these SD cards, were in your pocket, and

3    then placed -- you placed them in your mouth.  So there's

4    really no question as to your possession of them.

5        And the review of the content indicated, based on the

6    record before me here, that they did contain child

7    pornography.  And that given the nature of them, they

8    were -- they're associated with use of the computer, given the

9    nature of them.  So I believe the government has shown it has

10   a strong case against you.  Certainly enough to obtain a

11   conviction.

12       Regarding the nature and circumstances of the

13   offense, the offense involves child pornography, of course,

14   and that represents a -- I think the characterization is

15   correct, essentially an ongoing harm to the children who are

16   depicted in materials such as that.

17       Your conduct at the time, pulling them out of your

18   pocket and attempting to swallowing them, ending up chewing

19   one of them -- swallowing one and then the others were

20   available to law enforcement.  But certainly, I agree it does

21   indicate knowledge that it's material that you did not want

22   law enforcement to have access to, so you knew it was wrong.

23   But it also involved destruction of evidence, which is

24   concerning.

25       I would add that you do face, if you were to be



1    convicted -- at least by statute, you face an extended term of

2    incarceration.  I've not done a sentencing guidelines

3    analysis, but this is a felony offense that carries a

4    significant term of incarceration.  I believe, on the facts

5    alleged, up to twenty years of incarceration.

6            And I mention that in connection particularly with

7    the flight risk.  Because the prospect of having to serve

8    significant prison time would certainly give any rational

9    person the strong incentive to flee.

10           Regarding the history and characteristics, it is a

11   ameliorative fact or mitigating fact here that you do not have

12   a criminal history, and I have considered that.  On the other

13   hand, according to this record, you are illegally in the

14   United States and subject to deportation.  And that presents

15   you with the prospect of -- one option would be to be released

16   and simply disappear in the community.  As we know just from

17   everyday experience, that can be done in the United States at

18   the current time, or not flee, but defend this action, appear

19   in court and so forth, but then face the prospect of serving

20   the potentially lengthy term of incarceration and then being

21   deported.  So that dynamic, those two options, would give any

22   -- again, a rational person an incentive to flee.

23           You're apparently from Mexico so you can be back in

24   your home country simply by crossing a border.  But flight

25   doesn't necessarily involve leaving the country or even the



Colloquy

1  community, because we know from, again, common experience that

2  folks can simply melt into the background, so to speak, and

3  remain undetected.

4      I think danger comes into play here, because if

5  you're not being supervised, then there's clearly a risk, it

6  seems to me, of continued involvement with child pornography.

7  Hence, the finding with respect to dangerousness.

8      And another factor is actually the nature and

9  seriousness of the danger posed by your release.  And that

10  would be continued involvement with the child pornography.

11  And any child pornography is disturbing.  Here, some of this

12  material involved -- at least one of them involved a toddler,

13  so particularly defenseless folks involved there.

14      No third-party custodian was presented.  So there's

15  no issue of evaluating a third-party custodian for the

16  suitability of that person's service as such.

17      I considered the other points made by counsel of a

18  mitigating nature, but believe that, for the reasons stated,

19  detention is required by law here.

20      Ms. Shea, do you have anything further on behalf of

21  Mr. Orozco?

22      MS. SHEA:  No, sir.

23      THE COURT:  Thank you, ma'am.

24      Anything further, Ms. Kessler, on behalf of the

25  government?



Colloquy

1          MS. KESSLER:  No, Your Honor.  Thank you.

2          THE COURT:  I remand the defendant to the custody of

3    the United States Marshall.

4          The Court will be in recess.

5          THE COURT OFFICER:  All rise.  The court stands in --

6    (ends mid-sentence).

7                    (Court is adjourned)

8                        *  *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1           CERTIFICATE OF TRANSCRIBER

2

3           I, Esther Accardi, court-approved transcriber, in and

4   for the United States District Court for the Eastern District

5   of North Carolina, do hereby certify that pursuant to Section

6   753, Title 28, United States Code, that the foregoing is a

7   true and correct transcript from the official electronic sound

8   recording of the proceedings held in the above-entitled matter

9   and that the transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12          Dated this 1st day of December, 2020.

13

14

15

            /s/

16          _____

17          ESTHER ACCARDI, CET-485

18          COURT-APPROVED TRANSCRIBER

19

20

21

22

23

24

25

